COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia


KALYAN HOSPITALITY II, LLC

                                                      MEMORANDUM OPINION* BY
v.        Record No. 1864-23-2                   JUDGE VERNIDA R. CHANEY
                                                            MAY 6, 2025
COMMISSIONER OF HIGHWAYS


            FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
                                 Steven B. Novey, Judge

            Norman A. Thomas (Stephen J. Clarke; Norman A. Thomas, PLLC;
            Waldo & Lyle, P.C., on briefs), for appellant.

            Scott W. Carpenter, Assistant Attorney General (Jason S. Miyares,
            Attorney General; Leslie A. T. Haley, Deputy Attorney General;
            Chandra D. Lantz, Senior Assistant Attorney General/Section
            Chief; Nancy C. Auth, Senior Assistant Attorney General; Jeffrey H.
            Geiger; Brian P. Clarke; Sands Anderson, P.C., on brief), for
            appellee.


        Kalyan Hospitality appeals from the circuit court's order dismissing, following the parties'

stipulation, the Commissioner of Highways' Petition in Condemnation.  Kalyan argues that the

circuit court erred by excluding the testimony of its expert witness concerning the value of the

access to land taken by the Commissioner.  While the Certificate of Take may have eliminated

Kalyan's hypothetical ability to access Temple Avenue directly, taking a hypothetical ability to

access is not compensable.  As such, Kalyan's proposed expert testimony concerning the value

of that land was irrelevant and thus inadmissible.  This Court, therefore, holds that the circuit

court did not err in excluding Kalyan's evidence of the value of its loss of access.

_____
        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

Kalyan is a hotel development company whose property consists of three parcels lying between Temple Avenue to the south, Ridge Road to the southwest, and Old Town Drive to the northeast. The three parcels total approximately 25.17 acres of vacant land, with the largest parcel—Parcel 1—containing about 8.72 acres of which about 3.93 acres are determined capable of supporting development (useable). Kalyan purchased the Property in 2006[1] from Wilhook, LLC, another development company, with the intention of building a hotel and restaurant sites on the Property.

In 2000, before Kalyan purchased the Property, Wilhook asked the City for a zoning variance to develop the useable portion of Parcel 1, which the City engineer opposed, specifically with respect to the access from Temple Avenue.[2] The Commonwealth Transportation Board (CTB) also expressed concern about topographical and physical issues related to Temple Avenue. They noted that allowing access to Temple Avenue for the project would present "extreme topograph[ical] difficulties which create an undue hardship." Those difficulties included FEMA flood plains, a floodway and jurisdictional wetlands, and a 20-foot drop off from Temple Avenue to the southeastern portion of the Property. Further, there existed a limited access line between the Property and Temple Avenue along the easternmost 1,000 feet.[3]

---

[1] While the deed of bargain and sale was executed on November 13, 2006, it was not recorded in the clerk's office until February 7, 2007.

[2] The engineer was concerned about traffic overflowing to Temple Avenue. Based on the information he received from Wilhook and projected trip generation, he projected that "90% of the traffic would be off and onto Temple Avenue."

[3] A limited access line designates all or some of a highway as a "limited access highway," or "a highway especially designed for through traffic, over which abutters have no easement or right of light, air, or access by reason of the fact that their property abuts upon such limited access highway." Code § 33.2-400. CTB has the "right to acquire by purchase, eminent domain, grant, or dedication title to such lands or rights-of-way for such limited access highways." Code § 33.2-401.

As an alternative, the City approved access through another access way, Ridge Road, subject to a restriction on any development other than the acreage deemed "useable." The remaining land was placed under a conservation easement, and, in 2005, Wilhook began drafting development plans.

When Kalyan purchased the Property, Wilhook made no representations in the written contract as to direct access from Temple Avenue to the Property. Further, Kalyan's own plans for the Property depicted property access from Ridge Road. Kalyan contends that they explored the possibility of creating an entrance off Temple Avenue, using about 500 feet of frontage not already designated as a limited access line.[4] Yet the actual site plans submitted to the City do not depict this entrance, and instead only show access from Ridge Road.

On December 4, 2013, the CTB passed a resolution to extend a limited access line along Temple Avenue an extra 500 feet to the west, which was meant to enable a project by VDOT to replace an intersection on Temple Avenue with a roundabout. Pursuant to proper notice and forum requirements, CTB held an advance hearing on September 12, 2013, where all those present were given an opportunity to express their opinions, recommendations, and support or concerns about the proposed project. The City provided no response to VDOT as a part of the public participation process.

On February 22, 2016, the City filed a Certificate of Take which provided a temporary construction easement on the Property to facilitate work on the Project, a permanent drainage easement, and declared it necessary "to be taken any and all easements of access, light or air, incident of the lands of the landowner abutting upon said Limited Access Highway." The

---

[4] Nitin Patel, managing partner of Kalyan, testified that, while they never submitted a request or applied for approval of such entrance to the City, the Board was "very supportive, but noncommittal" to Kalyan's proposal for an entrance off Temple Avenue. The City consistently told Kalyan that "VDOT is working on an overall plan for Temple Avenue. We cannot discuss anything about giving you access at this time."

Certificate also stated that the City deposited $4,014 of just compensation, as the "fair value of the land hereinafter described, . . . and damages to the remainder, if any, owned in whole or in part by Kalyan Hospitality II, LLC." The Project precluded access to the Property via Temple Avenue, but did not affect access via Ridge Road, and required traffic to travel about 300 additional feet to enter the Property.[5]

On September 1, 2016, the Commissioner filed a Petition in Condemnation ("Petition") seeking indefeasible title to easements and determination of just compensation. The Commissioner sought to condemn "2,010 square feet in permanent drainage easement, together with certain other permanent and temporary easements, including, a temporary construction easement, and an easement of access, light, or air, incident to the lands of the landowner abutting upon Route 95, a limited access highway." The Petition asserted that "[n]o more private property is being taken than that which is necessary to achieve the aforesaid public use." This Petition would cut off all of Kalyan's rights to directly access Temple Avenue from its frontage along that roadway.

Before the circuit court, Kalyan alleged that the Certificate creates a taking via the limited access line which deprived them of the necessary access to Temple Avenue to develop their Property. Kalyan hired appraiser Matthew P. Ray, who appraised the Property and opined that Kalyan was owed just compensation for a total of $1,629,790. The appraisal relied on statements made by Christopher Thompson, Kalyan's engineer, that access to the Property was

---

[5] This evaluation came from Dove Valuation Services' report of the Property, which stated that

> [i]n the before, the only access to the subject property was granted from Ridge Road and in the after, the only access to the subject property is from Ridge Road. In the after, the Ridge Road access is about 300 linear feet further along Temple Avenue, but is now at a safer, signalized intersection.

available from Temple Avenue before the construction. Thompson came to this conclusion by opining that access would be "feasible from an engineering standpoint," but produced no specific plans or proposals for developing such access.

The Commissioner designated Nancy Dove, SRA, as their appraisal expert. Dove concluded that "the acquisition [had] no negative effect on the market value of the subject's remainder" and reported that the property's "market value of the subject site is the same after the acquisition as before the acquisition less the value of the permanent easement." Dove opined that Kalyan was owed a just compensation figure of $9,100.

The Commissioner filed a motion *in limine* to exclude landowner's evidence regarding loss of access, alleging that Thompson and Ray's testimony should be excluded for lack of foundation in fact. The circuit court found that Kalyan's proffered valuation was "speculative, given the uncertainties and unknowns and access to Temple Avenue." The parties subsequently stipulated that Kalyan was entitled to $16,492.50 in just compensation for the taking "without waiving any rights to" appeal the circuit court's evidentiary ruling. Kalyan now appeals.

ANALYSIS

Kalyan challenges the circuit court's exclusion of expert testimony at trial, arguing that its inability to present evidence pertaining to Kalyan's loss of access to Temple Avenue and the resultant diminution of its property value prejudiced Kalyan's right to just compensation under Virginia's Constitution.

"Appellate courts review a circuit court's ruling on the admissibility of evidence under an abuse of discretion standard." *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 206 (2022). A court can abuse its discretion "by considering and giving significant weight to an irrelevant or improper factor." *Id.* "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a

- 5 -

reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Article 1, § 11 of the Constitution of Virginia allows private property to be damaged or taken for public use so long as there is "just compensation to the owner thereof." Va. Const. art. 1, § 11. "Just compensation shall be no less than the value of the property taken, lost profits, and lost access, and damages to the residue caused by the taking." *Id.* Lost access is "a material impairment of direct access to property, a portion of which has been taken or damaged." Code § 25.1-100 (2015)[6]; 2014 Va. SB 1435 § 1. "The body determining just compensation shall include in its determination of damage to the residue any loss in market value of the remaining property from lost access caused by the taking or damaging of the property." Code § 25.1-230.1(B) (2015); 2014 Va. SB 1435 § 1.

In the case of eminent domain, "a 'complete extinguishment and termination of all the landowners' rights of direct access' to an abutting highway constitutes a compensable taking." *State Highway & Transp. Com. v. Lanier Farm, Inc.*, 233 Va. 506, 510 (1987) (quoting *State Highway & Transp. Comm'r v. Linsly*, 223 Va. 437, 442-43 (1982)). Direct access is an "ingress or egress on or off a public road, street, or highway at a location where the property adjoins that road, street, or highway." Code § 25.1-230.1(A) (2015); 2014 Va. SB 1435 § 1. But "a mere

---

[6] The statutory definitions of the relevant terms are controlled by the versions of those statutes in place at the date the Certificate of Take was filed, March 10, 2016.

partial reduction or limitation of an abutting landowner's rights of direct access, imposed by governmental authority in the interest of . . . public safety, is considered a valid exercise of the police power and is not compensable in condemnation proceedings." *Lanier Farm, Inc.*, 233 Va. at 510.

"[I]t is improper to consider circumstances that are 'based on future expenditures or improvements' to the property, as such circumstances involve too much speculation and conjecture." *Va. Elec. & Power Co. v. Hylton*, 292 Va. 92, 108 (2016) (quoting *Appalachian Power Co. v. Anderson*, 212 Va. 705, 708 (1972)). It follows that a landowner cannot claim "lost access" by merely asserting loss of a hypothetical ability to access a roadway. *See Palmyra Assocs., LLC v. Comm'r of Highways*, 299 Va. 377, 386 (2020) ("Sutton's testimony concerning lost 'development potential' was necessarily rooted in a lost 'pad site.' This hypothetical pad site depended on contingent and speculative plans—plans the trial court properly excluded.").

In *Palmyra*, the landowner tried to claim damages based on an alleged inability to develop a fourth pad site, rather than an inability to develop a desired access point as in this case. *Id.* at 380. The owner of a 44-acre vacant lot "intended to develop the property into a commercial development" and "had site plans drawn up in the decade prior to the take." *Id.* at 379. As with this case, VDOT acquired a portion of the property to develop a roundabout, so the owner sought to introduce evidence that the project "reduced the development potential of the residue by reducing its frontage size and thus eliminating a fourth building pad." *Id.* at 380. The circuit court refused to allow an expert to testify to damages on a per lot basis, and excluded site plans that were developed a decade before the take. *Id.* On appeal, the owner claimed the circuit court abused its discretion in excluding this evidence, to which the Supreme Court disagreed. *Id.* at 382. The Supreme Court held that site plans and testimony based on "development potential" were inadmissible because the plans were uncertain and speculative. *Id.* at 384-86. The Court

based its decision on several factors, including that (1) the plans had not been approved by the County; (2) the property faced obstacles to development given that the land was located in a floodplain; and (3) extensive and expensive infrastructure would be needed to develop the land, such as construction of an actual entrance. *Id.*

The facts in *Palmyra* closely resemble the facts here. Kalyan argues that the land's frontage on Temple Avenue constituted "direct access" to the highway and that the circuit court erred in ruling that Kalyan's access to Temple Avenue was "speculative." Kalyan contends that the circuit court adopted an incorrect definition of "direct access," arguing that the court held a property right is bestowed by the government only upon the landowner's obtaining of permits or other approvals. However, nowhere in the record does the circuit court limit the definition of direct access to include only those rights bestowed by the government through a permit. The circuit court looked at whether Kalyan had the ability to access the highway from their land abutting Temple Avenue and found that there existed too much speculation regarding whether the land was useable and accessible, much like in *Palmyra*.

Kalyan attempts to distinguish *Palmyra* by arguing that Palmyra's access was dependent on various conditions being met that were not. Kalyan argues that Palmyra relied on their site plan from a decade prior which was conceptually but not officially approved. *Palmyra*, 299 Va. at 381. Here, Kalyan has no site plan, and rather argues that its undeveloped but developable land should be compensable whether it is developed or not. Kalyan argues that development is irrelevant so long as it can be developed. This Court disagrees. While Kalyan alleges that they possess "direct access" to Temple Avenue, the abutting portion of the Property contains marsh and wetlands designated as a floodplain, and the highway existed on a bridge twenty feet above the surface. The unique topography of this land would require several conditions to be met before the land could be developed. Additionally, the CTB never approved plans by Kalyan or

- 8 -

the Property's previous owner to build an access road via Temple Avenue, and in fact directly opposed this in favor of creating an accessway via Ridge Road. Any utility of the taken property as means of "direct access" is therefore hypothetical.

This record shows that there is no direct access to the Property via Temple Avenue that was extinguished when the City filed their Certificate of Take. Thus, any value of the taken land was too speculative to consider when determining the amount of just compensation. *See Hylton*, 292 Va. at 108 ("[I]t is improper to consider circumstances that are 'based on future expenditures or improvements' to the property, as such circumstances involve too much speculation and conjecture." (quoting *Appalachian Power Co.*, 212 Va. at 708)).

"Evidence that is not relevant is not admissible." Va. R. Evid. 2:402(a). "Relevant evidence" is "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. The circuit court properly excluded the evidence related to Kalyan's hypothetical plans for the taken property, given the unknowns and uncertainties with access to the roadway from the useable land. Kalyan produced no specific plans or proposals for developing access to Temple Avenue through the area designated as a limited access highway. Kalyan's claims are not only speculative, but contingent on approval to develop lands marked as floodplains and under a conservation easement. *See Palmyra*, 299 Va. at 385 (finding that the circuit court did not abuse its discretion because the site plans had not been approved, the County imposed a number of conditions on the approval of the proposed plan which Palmyra had not met, and the property was situated in a floodplain which may have required Palmyra to build a retaining wall or fill and lose the land). As in *Palmyra*, Kalyan has not obtained approval to develop the taken land. Kalyan's expert testimony about the taken land's value would not have been consequential to any matter in dispute. Therefore, the circuit court did not err in excluding it.

CONCLUSION

For the above reasons, this Court finds that the circuit court did not err in excluding expert

evidence concerning the value of a hypothetical Temple Avenue accessway.  Accordingly, this

Court affirms the judgment of the circuit court.

*Affirmed.*